De Lashment *v.* McClelland *et al.*\*

(Division B. Nov. 19, 1928. Suggestion of Error Overruled Dec. 3, 1928.)

[118 So. 904. No. 27408.]

782

*H. P. Heidelberg,* for appellant.

*S. A. Witherspoon* and *H. H. McClelland,* for appellee.

Argued orally by *H. P. Heidelberg,* for appellant.

ETHRIDGE, P. J.   T. L. De Lashment, appellant here, complainant in the court below, filed two suits against H. H. McClelland *et al.,* appellees here, defendants in the court below, for two separate tracts of land situated in the east half of section 7, township 4, range 4 west, which suits were consolidated and tried together by agreement of counsel.

The appellant's cause of action is founded upon an alleged clerical mistake in entering upon the tract book of the United States Land Office then at Augusta, Miss., an Indian land warrant, about the year 1853.   It appears that about the 6th day of October, 1845, a Choctaw Indian

land warrant was issued to Eah-to-nah, a Choctaw head of family, said warrant being numbered 465; and on July 5, 1853, this scrip was assigned to Joshua K. Hawthorne, Joseph R. Hawthorne, and Garland Goode by Kon-che-tubbe, special Indian agent, Bowman certifying that said Kon-che-tubbe was the proper representative of Eah-to-nah, who was dead. The assignees of this scrip, Hawthorne and Good, made application and located it on the east half of section 7, township 5, range 4. Patents were thereafter issued from the United States government to said assignees to the east half of section 7, township 5, range 4 west. The specific land entered under this scrip contained a fraction over one hundred and sixty acres, being seventy-eight one hundredth acres surplus which was paid for by Hawthorne and Good under the requirements of the United States Land Office.

It appears that on the tract book of original entries kept in the Land Office at Augusta, Miss., there was an entry showing that Choctaw certificate No. 465 above mentioned was issued on the east half of section 7, township 4, range 4, but at some later date there was written on the margin of said book of original entries on the list containing this entry the word ''error, see East half of Section 7, Township 5, Range 4, West.'' There was nothing to show who made this entry, nor when it was made, nor for what purpose; it not being signed by anybody, and being made in a different colored ink from the original entry.

About the year 1916, a certified copy of the tract book of original entries for lands lying in Jackson county, Miss., was made up and certified to by W. F. Cummins, Register of the United States Land Office at Jackson, Miss., and in making up this certified copy, Cummins failed to copy the entry showing the error, and the record was filed in the chancery clerk's office in Jackson county, Miss., without said notation thereon.

After this controversy arose, and after patents to the lands in the east half of section 7, township 4, range 4, were filed, attention was called to the United States Land Office at Washington, D. C., where the land office records formerly kept at Augusta, and later at Jackson, Miss., had been sent after the land office in said territory had been closed by the Department of the Interior, and it was found that the entries of error above mentioned existed upon the book of original entries. It further appears that patents for the east half of section 7, township 5, range 4, were duly issued by the United States government to the assignees of the Indian land scrip above mentioned.

There were tax sales made of east half of section 7, township 4, range 4, by the state authorities, and there were some suits in the chancery court to confirm tax titles thereunder; but, at the time such assessments, sales, and confirmations of title to said land were made, this land was in the United States government, and patents therefor were not issued until 1920, when patents to the appellees were issued.

In investigating the title of appellant at the time he was purchasing the claims of title through which he claims, it was discovered that appellees, H. H. McClelland and wife, had executed a mortgage or trust deed upon a portion of the land embraced in this suit in favor of a financial institution in Birmingham, Ala., and this was called to the attention of the purchaser at the time the investigation was being made, but no title was then of record in McClelland showing by what title or right he claimed title, but later the McClelland patent was placed of record.

After the complainant introduced proof, the defendants introduced the patents to Hawthorne and Good showing the grant of east half of section 7, township 5, range 4, by virtue of said Indian land certificate No. 465 above mentioned, and the receipts issued by the land

office for the surplus above mentioned, and also the entry of defendants (appellees here) of the lands with the United States government under the homestead laws and patents issued to them conveying the title to them.

The chancellor dismissed the complainant's bill, and from that decree this appeal is prosecuted.

It is contended by the appellant (1) that the court below erred in overruling appellant's objection to evidence offered by appellees, and (2) that the court erred in dismissing complainant's bill and refusing the complainant any relief whatever.

It is contended that as the original entry was made on the United States tract book of original entries showing the location of the lands in the east half of section 7, township 4, range 4, this segregated the lands from the public entries, and that, whether it was an error or not, it could not be corrected without notice to the parties claiming rights under such entry.

It will be remembered that the entry was made on the original tract book of entries also as the east half of section 7, township 5, range 4 west, and that this entry was followed up by a grant of patent, and that these were placed upon the list containing the entry as the east half of section 7, township 5, range 4 west.

The whole trouble appears to be that the register of the Land Office, in making up the certified copy of entries in Jackson county, Miss., failed to note the entry of error, above mentioned, on the list he was making up and certifying, and that his certified copy was filed in the chancery clerk's office in Jackson county, and was used in making abstracts and examining titles to see whether the land had passed out of the United States government. The entry mentioned does not show the date of any patent to the appellant or those through whom he claims.

While the certified copy of the book of original entries may be received as evidence of the facts indicated there-

in, and, in the absence of any showing to the contrary, will be accepted as being correct, yet it is the issuance of patents and entries on the original tract book of original entries that are really controlling.

Therefore, when we take all that could have been learned by proper inquiry, it appears that the title to the land in controversy had never been divested out of the United States government prior to the entry and perfecting of the rights of the appellees under their entry, followed by patents issued to them by the United States government.

The property belonging to the United States government, it was not subject to taxation under the laws of this state, as the state has no power to tax property of the government. It follows, therefore, that the assessments, sales, and confirmation proceedings were void. Before a title acquired at a tax sale can be confirmed, it must appear that the United States government has parted with its title to the property assessed and sold for taxes, and if it has not so passed, any confirmation proceedings are invalid.

We think that the appellant's notice of the deed of trust or mortgage to the Birmingham savings institution, being actually found upon the records by his attorney in investigating the title and called to appellant's attention by said attorney, called for further inquiry, which, if it had been made, would have disclosed the equity in the appellees, the McClellands, and would have shown that the title had never passed from the United States government.

It is true that a person who does not find a deed of record which is outside of his chain of title is not bound by it, and is under no duty to hunt beyond his chain of title which he is investigating, where that chain of title appears to be complete and perfect. But, where he actually sees a deed of record affecting the property he is buying or acquiring a lien upon, he must

make such inquiry as is necessary to disclose what right such person is claiming through such instrument, and if reasonable inquiry will disclose something that will defeat the title being investigated, that will not be constructive notice, but actual notice of a claim, and he will be bound by what is disclosed in such a case.

We do not think the case before us is a case for holding the patentees to be trustees for the complainant. We recognize there are cases in which the patentees will be treated as trustees of the legal title for the benefit of the owner of the equitable title. But the record before us does not present a case for the application of this doctrine.

The judgment of the court below will therefore be affirmed.

*Affirmed*